## GULF & S. I. R. Co. v. SAUCIER.*

(Division B. May 25, 1925.)

[104 So. 180. No. 24975.]

1. RAILROADS. *Injuries proximately caused by unsafe crossing actionable.*

   A railroad is under the legal duty to keep its track and roadbed, where it is crossed by a public highway, in a reasonably safe condition for public travel, and, if it negligently permits such crossing to become dangerous and unsafe, it is liable for the injuries proximately caused thereby.

2. NEGLIGENCE. *Failure of driver of vehicle to stop held not to prevent recovery for injury proximately caused by railroad's negligence in failing to keep track reasonably safe.*

   Section 3, chapter 320, Laws or 1924, requiring drivers of motor vehicles on approaching railroad crossing to stop within not less than ten feet nor more than fifty feet therefrom, does not prohibit a person violating such laws from recovering damages for an injury proximately caused by the negligence of the railroad company in failing to keep its track in a reasonably safe condition. By the terms of that section it is provided that a violation of the act shall not affect recovery, and that questions arising under the comparative negligence statute (section 502, Hemingway's Code; chapter 125, Laws of 1910), shall apply regardless of the penalties of the act.

3. APPEAL AND ERROR. *Negligence. Burden of proving contributory negligence is on defendant; defendant, neither pleading nor requesting instruction on contributory negligence, cannot rely thereon on appeal.*

   Contributory negligence is an affirmative defense and the burden of proof is upon the defendant to prove such contributory negligence, and where the defendant neither pleads nor requests an instruction on contributory negligence, it is not entitled to rely thereon on appeal.

4. APPEAL AND ERROR. *On failure to plead contributory negligence, or to request instruction directing jury to diminish damages, judgment will not be reversed.*

   Where contributory negligence was not pleaded, nor instruction requested directing the jury to diminish the damages, because

139 Miss.—32.

of contributory negligence, the court will not reverse the judg-
ment it might have sustained in the absence of contributory
negligence.

---

*Headnotes 1. Railroads, 33 Cyc., p. 927; On defective condition of
railroad crossing as effecting carrier's right to recover for injuries
sustained in collision with train, see notes in 14 L. R. A. (N. S.) 312,
20 L. R. A. (N. S.) 426; 22 R. C. L., p. 992; 3 R. C. L. Supp., p. 1299;
2. Railroads, 33 Cyc., p. 927; On care required of driver of automobile
at railroad crossing, see notes in 21 L. R. A. (N. S.) 794, 29 L. R. A.
(N. S.), 924; 46 L. R. A. (N. S.) 702; 2 R. C. L., pp. 1205-1206; 1
R. C. L Supp., p. 742; 4 R. C. L. Supp., p. 157; 3. Appeal and Error, 3
C. J., section 590; Negligence, 29 Cyc., p. 601; 4. Appeal and Error,
3 C. J., section 590.

APPEAL from circuit court of Lamar county.
HON. J. Q. LANGSTON, Judge.

Action by Talmadge Saucier, by his mother and next
friend, against the Gulf & Ship Island Railroad Com-
pany. From a judgment for plaintiff, defendant ap-
peals. Affirmed.

*T. J. Wills,* for appellant.

It will be noted that the highway in question was the
main graveled highway between Columbia and Lumber-
ton. The testimony further shows that it was traveled
more perhaps than any other highway in that section of
the state with the possible exception of the Jackson
Highway. It is to be observed, further, that with all of
the automobiles and trucks crossing this highway for a
considerable period of time before the accident com-
plained of and for a considerable period of time there-
after, in which period of time the crossing was in prac-
tically the identical condition that it was in on the date
of the injury for which this suit was brought, no injury
resulted or inconvenience was experienced in going over
the crossing.

There is another thing that stands out in this case
prominently; that is, that the roadbed on each side of the
railroad track was elevated several inches above the level

of the ground on each side; that there was a curve or turn in the road at almost right angles on each side of the track; that in approaching the crossing, plaintiff was travelling on the south side and just before reaching the track, the road turned at right angles and crossed the track, and then turned against at almost right angles, and proceeded parallel with the track. These two right angle curves were something less than one hundred feet apart, and on the inside, or nearer the track than the curve, the Mississippi Stop Law signs had been placed.

There is another thing that the evidence shows conclusively, and that was in making the curves, the travelling vehicles went on the inside of the curve, or what would be termed in common parlance, they cut the corners. On each side of the railroad track, eight feet or more from the rails, culverts were placed under the highway to dispose of the water that otherwise would have banked against the roadbed.

These culverts were made of vitrified clay and extended a little beyond the roadbed, which was shown to be about twenty feet in width on the north side of the track, and eight feet away this culvert material had been broken off so as to be even with the shoulder of the roadbed. The passing vehicles in cutting the corners of the curve had worn the pathway, as shown by the evidence, within eight or ten inches of the shoulder of the roadbed and of the end of this culvert. It is patent that no negligence could be predicated upon, and no wrong was done in permitting the culvert to be broken back even with the shoulder of the roadbed. A protruding culvert would have been more dangerous to a car running off the roadbed than a culvert broken off and removed.

A prominent fact in the record is, that in approaching this crossing, the plaintiff was driving a truck with a drum of oil standing on end just behind where he was sitting; that there was nothing to hold to or brace him on the truck and to hold and brace the drum of oil on the truck to prevent them from falling off. It is further apparent that the plaintiff saw the rail protruding above

the roadbed in the ruts that had been beaten out by the crossing vehicles, at a sufficient distance away to have stopped his truck before he reached the track. It is further evident that at the rate of speed he was going, he could have stopped his truck in ten feet. The record further shows that he ran over the track at an angle and a sufficient rate of speed to rock the drum sitting on end on the platform, unbraced, and unsupported just at his back. When the drum rocked he reached his right hand back and caught the drum to steady it. When he did so, with his left hand on the wheel, he turned to the left so as to drive his car off the roadbed at the point where the culvert passed under. When the left front wheel of the car went off the roadbed, it threw plaintiff and the drum both off of the truck and in falling, his arm was caught under the chime or sharp edge of the drum and mangled.

The plaintiff was smoking his cigar. Of course, he said that it had no effect on him, and perhaps it did not. Men under the influence of intoxicants always deny that they are intoxicated and assert that they are absolutely normal and sober. Let that be as it may. It can have no probative weight except to explain why the plaintiff drove his car in such a manner as to drive it off the highway and dump himself and the drum from the truck on to the ground.

The plaintiff's action in so driving the truck as to run it off the road at the point of the culvert and beyond the rails without regard to what influenced him to do it was the proximate cause of his injury. It is shown that the roadbed all along was full of holes; that it was rough, caused by the heavy traffic and the extreme dry weather.

Proximate cause is defined to be that cause of an injury which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred. See 22 R. C. L. 110; *Goodlander Mill Co.* v. *Standard Oil Co.,* 27 L. R. A. 583; *Winona* v. *Bodzet,* 23 L. R. A. 204; *Western Railroad Co.* v. *Mutch,* 11 So. 894; *So. R. R. Co.* v.

*Reeder,* 44 So. 699; and the long list of cases cited under Note 2 in 22 R. C. L. 110.

Where a person's own acts produce the injury complained of, even though the defendant might have been negligent, or even violating a law, which action furnished the occasion or the incident from which the injury resulted, it will not impose liability on the defendant. A well-reasoned case along this line is *Howell* v. *Illinois Cen. R. R. Co.,* 21 So. 746. See also: *Bardwell* v. *M. & O. R. R. Co.,* 63 Miss. 574; *Gulf & Ship Island Railroad Co.* v. *Ellis,* 88 So. 489; *G. & C. R. R. Co.* v. *Sneed,* 36 So. 261; *L. & N. R. R. Co.* v. *Daniels,* 99 So. 434, 34 A. L. R. 516; *Collins* v. *Railroad Co.,* 89 Miss. 375.

The law required the plaintiff to stop his car in not more than fifty and not less than ten feet of the railroad track. If he had obeyed this positive mandate of the law, then the truck, in passing over the track, would have been going such a rate of speed that plaintiff would not have driven it off the road and would not have sustained the injuries complained of. *Dantzler Shipbuilding & Dry Docks Co.* v. *Hurley,* 119 Miss. 475; *Broschart* v. *Tuttle,* 11 L. R. A. 33. See to the same effect: *Illinois Central R. R. Co.* v. *Messina,* 111 Miss. 885; *Telegraph Co.* v. *McLaurin,* 108 Miss. 273.

*Rawls & Hathorn* and *Hall & Hall,* for appellee.

## I.

The record in this case does not bear appellant out in his contention that appellee's own acts were the sole and approximate cause of his injuries: Appellant correctly defines "proximate cause." 22 R. C. L. 110.

If, however, appellant had followed this same authority he would have found that the universal rule is, that the question of what is the proximate cause of a happening is one for the jury, and especially is this true if the facts are disputable and susceptible to more than one inference. 22 R. C. L. 148, par. 31.

The rules announced in R. C. L. prevail in Mississippi as will be seen from the following cases: *Railroad Co.* v. *Bethea*, 88 Miss. 128; *Railroad Co.* v. *Parker*, 88 Miss. 197; *Railroad Co.* v. *Scott*, 95 Miss. 47; *Bell* v. *Southern R. R. Co.*, 30 So. 821. The question of whether or not appellee's negligence or the negligence of the appellant was the proximate cause of the injury was properly submitted to the jury and under instructions asked for by the appellant which instructions were very liberal indeed to appellant.

The question of whether or not appellee's negligence, if any, was the sole proximate cause of the injury was by this instruction asked for by appellant, submitted to a jury of twelve men, and they said by their verdict that appellee did nothing which solely caused his injury. They said it was not by reason of a lack of care and caution by appellee either in the rate of speed, steadying the drum or any other thing done by appellee that caused his injury, but that its proximate cause was the negligence of the appellant in failing to keep the crossing in a reasonably safe condition. Who was better prepared to say whose negligence caused this injury—the trial judge, who listened to the testimony merely for the purpose of applying the law to it, or the twelve men who heard all the testimony, and with a view of returning a verdict reflecting the truth about the whole matter?

We respectfully submit that this record fails to show appellee guilty of any kind of negligence which contributed to his injury, much less such negligence as would constitute the sole and approximate cause of his injury. If the jury had found as an issue of fact that appellee was guilty of no negligence which contributed approximately to his injury, on the testimony in this case, neither the lower court nor this court would disturb the verdict. Then certainly it is going a long way to ask this court to say that the acts of appellee, as shown by the record, constitute the sole proximate cause of his injury.

## II.

Taking up for discussion now, appellant's second contention that appellee's failure to "stop, look and listen," for a train is a bar to his recovery, we respectfully submit that conceding for the sake of argument solely, that the law cited by appellant is applicable to violations of the law generally, yet it would not be true in this cause for the very statute which creates or makes the violation of the law answers the question and against appellant's contentions. In adopting the "stop, look and listen" statute, the legislature left no doubt about the matter. Again it was left for the jury to determine what was the sole or approximate cause of the injury. Sec. 4, Laws 1924, chap. 320.

The jury found by its verdict that the failure of appellee to obey the law was not the thing that proximately caused his injury, that is to say, they found affirmatively that "if he had stopped and then started up that he could not have crossed the track in safety."

We respectfully submit however, that in the absence of the special provisions of the stop, look and listen law, that this is not one of those cases where appellee would be barred from recovery because of a violation of the law. None of the cases cited by appellant are applicable here. The one cited from Connecticut, *Broschart* v. *Tuttle,* 11 L. R. A. 33, might be, if contributory negligence was a bar to recovery in this state, but a careful reading of that case will show that it is not applicable here.

Etheridge, J., delivered the opinion of the court.

This is an appeal from a judgment for personal injuries caused by the failure of the appellant to maintain a proper highway crossing.

The declaration alleged that where the line of railroad crosses a public road at the location designated in the declaration that said crossing was defective and unsafe for travel and could not be conveniently crossed with rea-

sonable safety to life and limb, and that it was the duty
of the railroad company to maintain such crossing in
suitable condition for reasonably safe travel. The decla-
ration alleged that the plaintiff was driving along said
highway at a less rate of speed than ten miles an hour in
a Fordson ton truck, which had a drum of gasoline on
the body or platform of the truck; that on account of the
defects in said crossing, the same being worn down to
a depth of four inches below the rails of the railroad
track, and worn on each side of the vehicle tracks to a
width of about two feet, that plaintiff's truck was caused
to violently bump or tilt, thereby overturning the drum
of gasoline, and plaintiff, in an effort to keep said drum
from falling off said truck, lost control of his truck, and
said truck ran into a broken culvert along said right of
way, thereby causing the plaintiff to be thrown from the
truck, and the drum of gasoline to be also thrown from
the truck and upon plaintiff's arm, severing it and neces-
sitating an amputation, etc.

There was a plea of the general issue to the declaration
but no special plea or notice under the general issue. The
testimony of the plaintiff showed that the public high-
way crosses the railroad track at said point at a some-
what irregular angle, not being at right angles, and that
in driving across the railroad track one wheel of the
truck would pass over the rail before the other, causing
a tilt of the truck, and by reason of the worn out places
or holes in the highway the vehicle was violently bumped
or tilted, causing the drum of gasoline to rock violently,
becoming unbalanced; that the plaintiff was driving and
undertook to seize the gasoline drum with one hand and
control the car with the other hand, but on account of the
defects in the highway the truck ran off of the graveled
part of the highway onto the defective culvert, which
caused both the plaintiff and the gasoline drum to fall
from the truck.

The crossing was not fixed with lumber or substantial
material, but the highway was made of gravel between
the railroad track and on the sides of the railroad track,

and this gravel, being softer than the rails, became worn and made a very rough passage, according to the plaintiff's version. The plaintiff is supported as to the condition of the crossing by a number of witnesses. The defendant contended and offered testimony tending to show that the highway was in good condition at the time of the injury.

On cross-examination of the plaintiff and the witnesses it was proven that the plaintiff failed to bring his truck to a full stop as required by section 3, chapter 320, Laws of 1924, but merely slowed down in crossing the highway crossing. At the conclusion of the plaintiff's evidence, the defendant moved to strike out the evidence and to grant a peremptory instruction for the defendant for the reason, that the proof showed that the fault was solely that of the driver of the truck, and also because the "stop, look and listen" law above referred to was not complied with. The motion was overruled. The defendant offered proof to sustain its contention. At the conclusion of all the testimony, the defendant requested a peremptory instruction, which was refused.

The appellant insists that the judgment is erroneous, because the proof did not make out a case for the plaintiff, and, second, because the verdict was excessive on account of the contributory negligence of the plaintiff, the verdict and judgment being for ten thousand dollars.

Section 3, chapter 320, Laws of 1924, above referred to, provides that it shall be unlawful for any person to drive or propel any automobile or automobile truck or other motor-driven vehicle upon any railroad track at a public highway or municipal street intersecting such railroad at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for trains, making certain exceptions in emergencies, and also provides:

"And in the trial of all actions to recover personal injury or property damages, sustained by any driver of such motor driven vehicles for collision of said vehicle and train in which action it may appear that the said

driver may have violated any of the provisions of this act, the question of whether or not the said violation was the sole or approximate cause of the accident and injury shall be for the jury to determine regardless of the penalizing feature of this act. That the violation of this act shall not affect recovery, and the question of negligence or the violation of this act shall be left to the jury.; and the comparative negligence statutes and *prima-facie* statute of our state shall apply in these cases as in other cases of negligence.''

The act also makes the failure to observe its provisions a misdemeanor.

It will be seen from a reading of the above statute in connection with sections 502 and 503, Hemingway's Code, chapter 135, Laws of 1910, that the negligence of the plaintiff would not bar a recovery, provided the defendant was also negligent with reference to the matter, and that the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured.

In *M. & O. R. Co.* v. *Campbell,* 144 Miss. 803, 75 So. 554, it was held that the defense of contributory negligence is always an affirmative defense, and the burden of proof as to it is upon the defendant, and that it was the duty of the defendant, if it desired to have the damages diminished in accordance with the statute, to procure an instruction to this effect. It has also been held by the court that contributory negligence, being an affirmative defense, should be pleaded if relied upon. The same construction was given to the statute (chapter 135, Laws of 1910) in *Lindsey Wagon Co.* v. *Nix,* 108 Miss. 814, 67 So. 459.

The proof for the plaintiff was ample to show that the condition of the highway at the crossing was unsafe for travel by the public. The failure to stop the truck as required by section 3, chapter 320, Laws of 1924, does not under the terms of that act, if it is applicable, bar a recovery. The plaintiff under his evidence was going at a rate of speed permissible under the law, being less than

ten miles an hour, and the speed was not the proximate cause of the injury. It may have been a contributing cause. The injury was caused proximately, at least in part, by the negligence of the defendant with reference to maintaining the highway.

There being evidence of negligence on the part of the defendant shown in evidence, and the jury by its verdict having found negligence, and the defendant not having availed itself of its right to have the jury instructed to diminish the damages in proportion to the negligence, if any, of the plaintiff, it is not entitled to avail of it here.

Considering the nature and extent of the injury and the suffering of the plaintiff, the judgment is not so excessive as to authorize the court to set it aside, and the judgment will therefore be affirmed.

*Affirmed.*